United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 10, 2004**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 03-30682

_____

DELORES BAROCCO, personally and as the
Administrator of the Estate of Brandi Barocco
and Hunter Barocco,

                                         Plaintiff - Appellee - Cross-Appellant,

versus

ENNIS INC, doing business as US Park.net;
ST PAUL FIRE & MARINE INSURANCE
COMPANY, also known as St Paul Companies,
also known as St Paul Property and Liability
Insurance Company,

                                         Defendants - Appellants - Cross-Appellees.

_____

Appeals from the United States District Court
For the Eastern District of Louisiana
(No. 02-CV-1450-R)

_____

Before JONES, BENAVIDES, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

       Ennis Inc. ("Ennis") and its insurer, St. Paul Fire & Marine Insurance Co., ("St. Paul") appeal

_____

       [*] Pursuant to 5th Cir. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

1

the district court's ruling on a motion in limine, admission of certain evidence, denial of a motion for directed verdict, and denial of a motion for partial new trial. In addition, Ennis and St. Paul contest the jury award. On cross-appeal, Delores Barocco ("Barocco") and her two minor children, Brandi Barocco ("Brandi") and Hunter Barocco ("Hunter") (collectively "the Barocco children") also contest the damages awarded. Finding no error, we affirm.

## I. FACTS AND PROCEEDINGS

On April 3, 2002, while in their stopped car, Barocco and the Barocco children were struck by a vehicle owned by Ennis. Barocco and the Barocco children declined medical assistance at the scene. The next day, when Barocco reported for work at Saks Fifth Avenue, she was unable to complete her shift. She was eventually diagnosed with soft tissue injuries, a herniation of the L5-S1 lumbosacral disk, bulges at the C4-5 and C5-6 levels of the neck, and a small herniation of the C6-7 level. Lumbar and cervical surgery was recommended, but could not be performed because of Barocco's pre-existing blood disorder. Barocco claimed she was unable to continue working at Saks Fifth Avenue, where she had been employed for 10 years.

Barocco and the Barocco children filed suit against Ennis and St. Paul. None of Barocco's treating physicians were called to give live testimony. Barocco did not call a vocational rehabilitation expert or an economic expert in connection with her claim for loss of future earnings. Because of this failure, Ennis and St. Paul filed a motion in limine to exclude lay testimony about her future loss of earnings. The district court denied this motion. Ennis and St. Paul then moved for a directed verdict, a motion the district court also denied. The jury returned a verdict awarding Barocco $37,108 in past loss of earnings; $350,000 in future loss of earnings, and $125,000 in "other damages," including pain and suffering. Although the jury found that Ennis had caused injury to one of the Barocco children,

2

only medical expenses were awarded. After the jury verdict, Ennis and St. Paul filed a Motion for New Trial and/or Motion for Judgment Notwithstanding the Verdict, which the district court denied. Both parties timely appeal.

## II. STANDARD OF REVIEW

This Court reviews a district court's evidentiary ruling for an abuse of discretion, and may only reverse the district court if "the ruling affects a substantial right of a party." *Marcel v. Placid Oil Co.*, 11 F.3d 563, 566 (5th Cir. 1994).

An appeal of a denial of a motion for directed verdict and a denial of a motion for new trial is, in effect, an "appeal [of] the district court's denial of judgment as a matter of law. As such a challenge contests the sufficiency of the evidence to support the jury's verdict, we exercise *de novo* review." *DIJO, Inc. v. Hilton Hotels Corp.*, 351 F.3d 679, 682 (5th Cir. 2003).

> However, when an action is tried by a jury, such a motion is a challenge to the legal sufficiency of the evidence supporting the jury's verdict. . . . This Court grants great deference to a jury's verdict and will reverse only if, when viewing the evidence in the light most favorable to the verdict, the evidence points so strongly and overwhelmingly in favor of one party that the court believes that reasonable jurors could not arrive at any contrary conclusion.

*United States ex rel. Small Business Admin. v. Commercial Tech., Inc.*, 354 F.3d 378, 383 (5th Cir. 2003).

Finally, great deference is given a jury award, and "[a]bsent an error of law, the reviewing court will sustain the amount of damages awarded by the fact finder, unless the amount is clearly erroneous or so gross or inadequate as to be contrary to right reason." *Vogler v. Blackmore*, 352 F.3d 150, 154 (5th Cir. 2003).

## III. DISCUSSION

A.     Evidentiary Rulings

3

Ennis and St. Paul appeal the district court's denial of their motion in limine to suppress lay testimony regarding Barocco's future earning capacity, arguing that Barocco could only establish loss of future earning capacity by presenting testimony of a vocational rehabilitation counselor or an economic expert. Louisiana appellate cases are split on the issue of whether a vocational expert is necessary to establish future earning capacity. *Compare Maddox v. City of Oakdale*, 746 So.2d 764, 770 (La. Ct. App. 1999) (finding that a vocational expert is not necessary to establish a damage award for loss of future earning capacity so long as "a plaintiff . . . present[s] medical evidence which indicates with reasonable certainty that there exists a residual disability causally related to the accident") *with Jones v. Trailor*, 636 So.2d 1112, 1122 (La. Ct. App. 1994) (finding that failure to present testimony of a vocational counselor or economic expert precluded an award for future lost wages).

The Louisiana Supreme Court has permitted awards for loss of future earning capacity both with and without the testimony of vocational and economic experts. *See Degruise v. Houma Courier Newspaper Corp.*, 683 So.2d 689, 693-94 (La. 1996) (permitting award for loss of future earning capacity based upon testimony of rehabilitative expert and economic expert); *Theriot v. Allstate Ins. Co.*, 625 So.2d 1337, 1343-44 (La. 1993) (permitting award for loss of future earning capacity based upon testimony of doctors with no reference to rehabilitative or economic experts). In short, all that Louisiana law requires a plaintiff to show in order to receive an award for loss of future earning capacity is "medical evidence which at least indicates there could be a residual disability causally related to the accident." *Bize v. Boyer*, 408 So.2d 1309, 1311-12 (La. 1982). Further, "[l]ay testimony simply serves to complement and corroborate medical evidence." *Id.* at 1312. It was therefore not an abuse of discretion for the district court to deny the motion in limine to exclude lay

testimony about loss of future earning capacity. It was similarly not an abuse of discretion by the district court to admit actuarial tables and to take judicial notice of treasury bill rates, instead of requiring an economic expert.

B. Sufficiency of the Evidence

The district court denied Ennis and St. Paul's Motion for a Directed Verdict and the later Motion for Partial New Trial and/or Motion for JNOV. Ennis and St. Paul maintain that there was insufficient evidence to support a jury verdict awarding any loss of future earning capacity on the part of Barocco. Viewing all of the facts in favor of Barocco, as we must, we believe sufficient evidence was presented.

As discussed *supra*, Barocco's failure to call vocational and economic experts is not fatal to her claim for loss of future earning capacity. Barocco presented evidence that she needed surgery to improve her back; that she was unable to have that surgery; that without the surgery she would either be in substantial pain, on the one hand, or require heavy medication precluding many employment opportunities, on the other. Reasonable jurors could have believed that these factors would negatively impact her future earning capacity. Because reasonable jurors could have arrived at this conclusion, the judgment of the district court in denying the motions for directed verdict and JNOV is affirmed.

C. Jury Awards

Both parties contest the damages awarded in this case. Ennis and St. Paul maintain that the award for loss of future earning capacity is too high. Barocco argues that the same figure is too low. In addition, Barocco contests the jury's award for "other damages" and its failure to award any damages to the Barocco children.

5

Damages for loss of future earnings are not necessarily measured by the plaintiff's earnings before and after the injury. Instead, "[d]amages should be estimated on the injured person's ability to earn money, rather than what he actually earned before the injury." *Hobgood v. Aucoin*, 574 So.2d 344, 346 (La. 1990). "To obtain an award for future loss of wages and/or loss of earning capacity, a plaintiff must present medical evidence which indicates with reasonable certainty that there exists a residual disability causally related to the accident." *Aisole v. Dean*, 574 So.2d 1248, 1252 (La. 1991).

We are unconvinced that the jury clearly erred in awarding Barocco $350,000 in loss of future earnings. There was some evidence by Barocco's treating physicians that she was disabled and that the disability was caused by the accident; it was therefore not clear error for the jury to award her some compensation for loss of future earning capacity. And while Barocco is not required by Louisiana law to put on a vocational expert, such an expert would have been able to better establish what, if any, professional limitations Barocco would encounter due to her injuries. As was the case in *Hobgood*,

> plaintiff did not call a rehabilitation expert to establish whether or not [her] injury disqualified [her] from pursuing certain aspects of [her] occupation or of [jobs she performed previously]. The doctors placed no restrictions on the plaintiff other than to "avoid activities that tended to make [her] condition worse and to use common sense."

574 So.2d at 347. Given the testimony at trial, the jury did not err in fixing the amount awarded to Barocco.

Similarly, the jury did not clearly err in awarding only $125,000 in other damages to Barocco. The jury was entitled to consider defense testimony that some of Barocco's injuries and pain could be attributed to earlier back problems. The award was not "contrary to right reason."

6

Further, we find no clear error in the jury's failure to award damages to Brandi for pain and suffering and loss of consortium and Hunter for loss of consortium. The only testimony about Brandi's pain and suffering was a single statement by Barocco that the girl's back hurt the day after the accident when she attempted to lift her backpack. There was little testimony, and none from the children, as to their loss of consortium. The jury was entitled to weigh the testimony and reach this verdict.

Finally, the judgment reflects the appropriate interest rate.

## IV.  CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.